## Gulich Township School District v. Korman

*Smith & Maine,* for petitioner.

*James K. Nevling* and *John C. Arnold,* for school district.

SMITH, P. J., January 25, 1938.—This is an appeal upon request for a hearing de novo filed by a school teacher dismissed by the board of directors in accordance with paragraph 1205(*j*) of the School Code of May 18, 1911, P. L. 309, as amended April 6, 1937, P. L. 213.

It appears that at a meeting of the board early in November various parents of pupils were present to complain of the respondent. An informal notice of a later meeting was then given, and at that time respondent appeared with his counsel. The board then declined to proceed without its own counsel present, but gave formal notice of charges and a request for dismissal under date of November 10, 1937. Hearing was held before the board on November 22d, and following the hearing respondent was notified that the board on November 24th found the charges "fully sustained by the evidence presented", and that he should be discharged as of January 1, 1938. It is upon this action the appeal is taken.

The notice of the charges against respondent is as follows:

"To Fred R. Korman

"Smithmill, Pennsylvania

"Dear Sir:

"In accordance with the provisions of the Act of May 18, 1911, P. L. 309, as amended by the Act of April 6, 1937 (no. 52), you are hereby notified that parents of pupils attending Mount Grove Grammar School have requested the Gulich Township School Board to dismiss you, and have preferred charges against you, a detailed written statement of which follows.

"You are hereby notified that a hearing will be held on the charges preferred before the board of school directors of Gulich Township on Monday, November 22, 1937, at 7:30 P. M., when and where you may appear, either in person or by counsel, together with any witnesses whom you may care to bring and be heard.

"A detailed statement of the charges against you is as follows: [This detailed statement is here omitted because taken up seriatim later in the opinion.]

"THE GULICH TOWNSHIP SCHOOL BOARD,

"By J. L. COPENHAVER,

"*President of the Board*   [Seal]

"Attest:

"F. A. CURRY,

"*Secretary.*"

Neither the board nor respondent put in evidence the formal action or resolution of the board passing judgment upon the charges after the hearing. The basis of the board's action, therefore, appears only from the notice of dismissal and the testimony of the several directors at the hearing before the court.

In the notice of the charges we find three general headings: (1) Incompetency; (2) wilful and persistent negligence, and (3) violation of the school laws of the Commonwealth. Under these are various specifications. In general the evidence in support of these specifications is vague and indefinite, consisting chiefly of the testimony of pupils as to various incidents, which are denied

by other pupils and the respondent himself. The evidence is of such a character, and the incidents themselves so trivial in their nature, that they failed in our opinion to show any misconduct on the part of the teacher.

(1) Taking up the various specifications under incompetency and referring to them by letter as a matter of convenience we find:

(*a*) "That you have failed to maintain proper discipline in the schoolroom." We find no evidence of this, the only evidence of adult visitors, one of them being F. A. Curry, a school director and secretary of the board, and at least one other adult visitor, being that discipline was being maintained on their visits.

(*b*) "That you have left the schoolroom and the pupils unattended for considerable periods of time." The number of occasions when this occurred is very indefinite, giving the testimony for the board its greatest possible scope, nor does it appear that the times when respondent was absent from the schoolroom were other than on occasions reasonably required for necessities.

(*c*) "That during school hours you have slept at your desk." The testimony of the board was to the effect that on two occasions there was such sleeping, one of them being at recess. The testimony is conflicting as to the occasion not at recess. While the testimony does indicate a sleeping or dozing at desk during recess, we see nothing improper about this, and especially when the respondent explains, and his fellow-teacher in the building also states, that he had a severe cold that week.

(*d*) "That you have failed properly to assist pupils with their studies." There is no testimony whatever on this.

(*e*) "That you have failed to perform your duties with reference to the maintenance and care of the school building." The only testimony faintly sustaining this is that occasionally Miss Stanley, the fellow-teacher, left later than the respondent and had to put down windows, etc. There is some contention that the respondent got pupils

to help in sweeping and cleaning the room. We see nothing improper in this, and think it is a common practice in schools, and one which benefits students by teaching them to be industrious in doing chores, so long as not made oppressive, as well as a matter of economy on the part of the school district.

(*f*) "That you have been lacking in the personal dignity proper to a teacher in the public schools." We find no evidence of this. The nearest to it the evidence gets is that on about two occasions chalk was thrown at pupils who were misbehaving, which, while perhaps not dignified, is certainly not a serious offense.

(*g*) "That you have not maintained satisfactory standards of personal cleanliness." There is no evidence of this whatever during the current year. The only evidence of it whatsoever was that some years past, the respondent had let his beard grow and had been somewhat slovenly in the matter of the pressing of his clothes, as testified by the assistant county superintendent.

(*h*) "That you have threatened physical violence to the parents of pupils." The only evidence on this is that of one, or perhaps two or three pupils, that in suggesting a meeting with the school board to hear complaints, the respondent made a gesture of rolling up his sleeves.

(*i*) The final specification, "that you have in other respects proven yourself incompetent to discharge the duties of your position", which is a general charge of incompetency, we discuss later.

(2) Taking up the specifications under wilful and persistent negligence we find:

(*a*) "That you have negligently and wilfully failed and/or refused to teach some of your pupils." There is no evidence whatever of this.

(*b*) "That you have failed and/or refused to maintain proper discipline in the schoolroom." No evidence.

(*c*) "That you have failed and/or refused to keep the schoolroom clean." No evidence, unless having the pupils help with such work is construed as such.

(*d*) "That you have improperly punished pupils for their failure to keep the schoolroom clean for you." There is evidence of one girl to this effect, but the pupil punished was not present, the punishment is denied, and the facts appear that as to the pupils whose parents objected to their sweeping, the respondent desisted from requesting them to do so.

(*e*) "That you have slept during school hours while about your professional duties." This has previously been discussed.

(*f*) "That you have in other respects been wilfully and persistently negligent in the pursuit of your duties as a teacher." This general charge of negligence is included in our later discussion.

(3) Violation of the school laws of the Commonwealth. The several specifications of violation of the school laws are:

(*a*) "By failing to keep the schoolroom properly clean", of which there is no evidence.

(*b*) "By improperly punishing pupils", of which there is no evidence.

(*c*) "By refusing to teach certain classes of pupils", of which there is no evidence unless it is contended that the failure to teach all of his classes each day amounts to that (which would certainly be a forced conclusion in a schoolroom of 43 pupils and four grades).

(*d*) "By threatening physical violence to the parents of pupils", of which there is no evidence.

In addition to matters mentioned in the complaint the board contends that the evidence shows a practice of having pupils correct each other's papers. This, however, is a recognized school practice, and there is no evidence, except that of a chance conversation some years ago with another teacher, that the respondent did not give a sufficient amount of attention to correction of papers himself. The similar matter of having pupils assist in the teaching of classes in spelling and arithmetic is likewise

a recognized practice and one way of developing pupils who are leaders.

There is also evidence that on one occasion there was a small fire in the wood piled up near the stove because of its being kept close to the stove, and that the danger of this practice was called to respondent's attention by the county superintendent, but this falls short of convicting him of negligence; and it appears from the other teacher's testimony that the wood was dried out by this method, but was removed to a safe distance upon leaving the building.

The board contends, however, that even though the charges of specific misconduct in specific instances have not been sustained, there is proof to sustain the general charges of incompetence and wilful and persistent negligence. The board contends, and we think rightly, that incompetence is used in a broad sense in the School Code, and does not refer merely to the lack of ability, scholastically or otherwise. As stated in the case of Vasbinder's Appeal, 29 D. & C. 597, it covers all the relations between the teacher and the student body. Whether a teacher is efficient or incompetent involves many intangible factors of character and attitude toward the pupils and the work, which are properly within the judgment and discretion of the board. We do not construe the School Code as now amended to require that there must be some specific act of misconduct shown. In our opinion if a school board exercises its discretion after full and fair hearing and knowledge of the facts, and after such consideration determines that a teacher is incompetent, the exercise of such judgment is entitled to the highest respect, and should not lightly be disturbed by the courts. The right of appeal to the court granted to the teacher is not intended to deprive school boards of their discretion in such matters.

The facts alleged to sustain a finding of incompetency here are that in previous years, during the 12 years of

respondent's teaching, complaints of parents were frequent; that in 1936 he was refused reëlection because of such complaints and dissatisfaction; that the number of pupils taught by respondent who passed the county eighth-grade examinations is much lower than the average; and the opinions expressed by members of the board that though having the natural ability, respondent had failed to apply himself so as to make a success of his teaching. The board members say that after refusing the respondent a school he was reëlected more or less on trial, and was instructed that he must conduct his school so that there would be no more complaints, but that notwithstanding this, complaints occurred almost immediately after the beginning of the present term. The figures as to the eighth-grade examinations are not complimentary to the respondent, showing that in the past six years there have been 17 passed and 34 failed, or about one third passing, and this having been as bad as none passed and five failed in 1936. The county superintendent states that the general average is 50 to 60 percent passing. Such an artificial test of success would not be reliable, however, of itself, as there might be many factors other than the quality of teaching which brought about the high number of failures. The board also points to the respondent's evasiveness, lack of definiteness and general slouchiness of demeanor on the stand, as supporting the general charges of the board that he was lacking in those efficient and clear-cut qualities which should be present in the teacher of youth.

The difficulty with the board's position in this matter, however, is that instead of arriving at a determination that the respondent was inefficient or incompetent, it sought to discharge him because of a number of allegations of trivial misconduct, none of which has been sustained. Nowhere do we find that the board took the definite attitude that the respondent was incompetent. The formal notice of the charges itself does not allege incompetency, nor does it make any charges on behalf of the

board itself, merely notifying that charges had been presented by various parents. The board did not see fit to put in evidence, apparently, its own resolution of formal action dismissing the teacher on the ground of incompetence. All we have as to the ground for dismissal is the notice that the charges were fully sustained, a conclusion with which the court cannot agree. Furthermore, it does not appear that any member of the board visited the schoolroom subsequent to the respondent's reëlection or during the current school year, nor did any of them attempt to give any first-hand information as to respondent's lack of competence during this recent period. There is no evidence from the county superintendent or his assistant that the conduct of respondent's school as determined by recent visitations on their part shows any incompetence. Assuming the correctness of the board's opinion as expressed by its members on the witness stand, that the respondent was not successful as a teacher, it would seem that after having given him a new chance to teach in the district schools, he should not have been dismissed merely because of his previous record, and without determining whether or not there was any present incompetence or lack of proper attitude toward his work. The board cannot rely simply upon the fact there were complaints, for it is well known that such complaints may be made against the most competent teacher, and the fact of their being made is no criterion to judge his competence. We note that one pupil's differences with the teacher had to do with her parents' objection to her bringing books home for study, from which it might appear there was some lack of coöperation on the part of at least some of the parents who are complaining of the teacher. Instead of showing a determination by itself as a board that the teacher was incompetent and for that reason was being discharged, the board here undertook to prove in a hearing de novo that the teacher is incompetent. The burden of proving that fact is therefore upon it, and in our opinion it has failed to show it.

*Order*

And now, January 25, 1938, in accordance with opinion herewith, the action of the school board in attempting to dismiss Fred R. Korman is reversed, and it is directed that the said Fred R. Korman be reinstated in his position as a teacher of the School District of Gulich Township as fully as if these proceedings had not been brought. The costs shall be paid by the school district.